J-A21024-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| LISA KIM K. YOUNG | |
| Appellee | No. 942 EDA 2013 |

Appeal from the Judgment of Sentence February 1, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003732-2011

BEFORE:  BOWES, J., OTT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY OTT, J.:                    **FILED OCTOBER 16, 2014**

The Commonwealth appeals from the judgment of sentence imposed on Lisa Kim Young (Young) on February 1, 2013, in the Court of Common Pleas of Philadelphia County.  On October 9, 2012, Young entered into an open guilty plea agreement to one count of aggravated assault and one count of possession of an instrument of a crime (PIC).[1]  On November 28, 2012, Young was sentenced to 11½ to 23 months' incarceration, with immediate parole, to be followed by an aggregate term of 13 years of probation.  The Commonwealth filed a timely motion for reconsideration, which was granted only to the extent that Young would report for

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2702(a)(1) and 907, respectively.

incarceration on February 19, 2013 and would then be paroled on March 4, 2013. This timely appeal followed in which the Commonwealth alleges the trial court abused its discretion by issuing a manifestly lenient sentence. After a thorough review of the submissions by the parties, the certified record, and relevant law, we affirm.

The facts of this matter are simply stated and undeniably tragic. We quote the factual history from the trial court's Pa.R.A.P. 1925(a) Opinion.

> On November 20, 2010, [Young] went to Craig Mills' house where she had an argument with Mills regarding allegations that Mills had sexually assaulted [Young's] teenage daughter. During the argument, [Young] grabbed a baseball bat from an umbrella holder in Mills' house and struck him twice with the bat. [Young] then left the house to go to her car; Mills followed her outside. [Young] retrieved a kitchen knife from her car and walked back towards Mills. [Young] then stabbed Mills once in the upper left arm. [Young] tried to stab Mills a second time but was prevented from doing so by family members. [Young] then drove away, but was stopped by the police soon thereafter. Upon being stopped, [Young] told the officers, "they didn't have anything to do with it, it was all me."[2] After being read her **Miranda**[3] rights, [Young] confessed to the detective that she stabbed Mills and fled the scene.
>
> Mills suffered serious bodily injury as a result of the stabbing, including losing a massive amount of blood from an artery severed during the stabbing. By the time Mills was brought to the hospital, he was non-responsive. He has remained in a coma since the stabbing and in on life-support and a ventilator. He also has no sensation and does not respond to stimuli.

_____

[2] It is unclear who "they" are.

[3] **Miranda v. Arizona**, 384 U.S. 436, 86 S.Ct. 1602 (1966).

Trial Court Opinion, 11/5/2013, at 1-2.

On October 9, 2010, Mills entered into a guilty plea agreement, wherein she pled guilty to aggravated assault and PIC, in exchange for all other charges being *nolle prossed*. There was no agreement as to a sentence. A presentence report was generated and at least 23 letters in support of Young were provided to the court. The Assistant District Attorney read an impact statement from the victim's grandmother and the victim's daughter testified how the crime had affected her.

The Commonwealth has challenged the discretionary aspects of Young's sentence. We begin by addressing our standard of review in sentencing matters:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

> ***Commonwealth v. Hoch***, 936 A.2d 515, 517-18 (Pa. Super. 2007) (citation omitted).

> The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal. ***See Hoch***, 936 A.2d at 518 (citation omitted). An appellant must satisfy a four-part test to invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence.

> > [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal; (2)

- 3 -

whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010 (citations omitted).

*Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1265-66 (Pa. Super. 2014).

Our review of the certified record confirms the Commonwealth's appeal is timely, the issue was preserved in the court below, and the required Pa.R.A.P. 2119(f) statement has been included. Therefore, we must determine whether reasons given in the Rule 2119(f) statement raise a substantial question. A claim that the trial court has imposed an excessively lenient sentence raises a substantial question. *See Commonwealth v. Hoch*, 936 A.2d 515 (Pa. Super. 2007). Accordingly, we will address the merits of the Commonwealth's appeal.

There is no dispute that the victim in this matter suffered a grievous injury. The Commonwealth has argued that the nature of the injury, alone, should require a term of incarceration. *See* Appellant's Brief at 14. Additionally, the Commonwealth contends that the trial court focused almost exclusively on the defendant's circumstances, relied on inaccurate and unsupported factors, and also relied on impermissible factors in fashioning Young's sentence.

We start our analysis with the trial court's statements of reasons at both the initial sentencing hearing of November 28, 2012, and the February 1, 2013 sentencing hearing following the Commonwealth's motion for reconsideration.

> THE COURT: All right. In this matter with the prior record score and the offense gravity, the standard score is 1 as negotiated without the deadly weapon enhancement, guidelines is 36 to 54 plus or minus 12. In this matter the defense is asking for a period of probation, the Commonwealth is seeking a period of 10 to 20 years of state incarceration.
>
> Let me note the following factors, some of which are mitigating factors, some of which are aggravated factors. Ms. Young is a sole caregiver of two children that she herself knows the impact of being a victim of a crime due to the fact her husband was murdered some years ago. Her extensive involvement in the community, the fact she has been self-employed and has hired other employees over a period of time, there is no drug and alcohol and mental health issues that are at play here. The recommendation of the presentence investigator that the defendant be put on supervision. The facts of this particular crime and for purposes of the recitation of facts, I will credit Ms. Kayhan's recitation of those facts as well as that contained in the arrest report which, among other things, at least in my view, resulted in a horrific injury which will result in a lifetime sentence both to the victim and to the victim's family.
>
> The fact that Ms. Young twice confessed, first to the arresting police officer and second to the detective in a written statement, the letters from the grandparents, daughter, community leaders and Officer Young amongst others, and the expression of remorse that the defendant has not only in pleading guilty, but also in the letter that she has recited, and also relying upon the statements by the victim's family which are clearly powerful and what I am taking most seriously.
>
> And in my view, considering first, the protection of the public, second, the nature and gravity of offenses as related to the impact on the community and third, the rehabilitative need of the defendant, I am considering the following:

First, the guidelines which were promulgated by the state legislature, second, the presentence investigation which I incorporate fully as part of today's record, arguments by counsel, support from the defendant's family, statements by the victim's family and my observation of the defendant both at the guilty plea and at the sentencing hearing, it is my intention to depart from the guidelines…

N.T. Sentencing, 11/28/2012, at 51-54. As mentioned above, the court imposed a sentence of 11 ½ to 23 months' incarceration, with immediate parole, followed by 13 years of probation. As noted by the trial court, the standard range sentence for aggravated assault with serious bodily injury for a defendant with a zero prior record score, is 36 to 54 months' incarceration. The aggravated and mitigated ranges are plus or minus 12 months. The sentence imposed, 11½ to 23 months' incarceration, is below the mitigated range.

On February 1, 2013, the trial court heard considerable argument from both counsel regarding the Commonwealth's motion for reconsideration of sentence. At the end of the hearing, the trial court addressed the Commonwealth's allegations.

THE COURT: I will start out by first examining Section 9721, which I did state that I considered.

I did not, in fact, lip service, or simply go through the motions, in terms of every cite that I considered.

I did consider the general principle that the sentencings that would be consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and also the rehabilitation of the defendant.

I also then considered the guidelines that were promulgated by the Commission on Sentencing, as well as the unique circumstances of this particular defendant, her background and support systems, as well as the lifelong sentence.

And I did say, Mr. Carpenter [Assistant District Attorney], that, in fact, in my view, resulted in a horrific injury that would result in a lifetime sentence both to the victim and the victim's family members.

So it's without a doubt that I considered it.

I think it is a matter of how you weigh that effectively.

And I understand sentencing, in my view, is one of the most difficult things that I do.

This is a unique day of all days that just – and it's by happenstance of fitting it on my calendar.

And in a case earlier today, and this is not to compare sentences, certainly, because that's not appropriate, but as the Appellate Court is in a position to understand and view sentences based upon their history.

For three years I have been sentencing people. And, in fact, today was a review by the defendant, who was sentenced 10 to 20 years on a drug conviction, and it was a statutory maximum sentence I imposed.

The Commonwealth in that case thought six-and-a-half to 13 years was appropriate.

And, so, I went far above what the Commonwealth even recommended.

So I sit here and I view things, and I weigh things, and I weigh them in a way that I think is appropriate.

I thought was it appropriate in that case, and I upheld that sentence.

I think the way I weighed it here with Miss Young is also appropriate, and I will maintain the sentence that I have imposed.

Let me address the factors under 97.5 [sic],[4] Total Confinement.

I do not believe that there is an undue risk that but for a period of partial confinement - but for confinement the defendant will commit another crime. And I believe that, in my view, that the need for correctional treatment is not what [] would be most effectively provided through the commitment.

I do weigh most heavily that a lesser sentence would depreciate the seriousness of the crime of the defendant.

There is no doubt that it was a serious crime and, as I indicated before, it was one that has a lifetime impact on the victim and on the victim's family, as I mentioned before.

And I also weighed, as I was required to do, because Mr. Silver [Defense Counsel] requested, a sentence of probation.

But under 97.2 [sic][5] an order of probation that I considered – the Commonwealth requires I considered 12 different bases to weigh those factors.

And I will note some of those factors that would weigh potentially towards an order of probation, which was that the defendant has no history of prior delinquency or criminal activity;

Has led a law-abiding life for a substantial period of time before the commission of the present crime;

That the criminal conduct of the defendant was a result of circumstances unlikely to recur;

That the character and attitudes of the defendant indicate that they are unlikely to commit another crime;

That the defendant is likely to respond affirmatively to probationary treatment.

_____

[4] 42 Pa.C.S. § 9725.

[5] 42 Pa.C.S. § 9722.

Those are factors that would weigh towards an order of probation.

However, there are factors that would disfavor probation, which was that the criminal defendant – the criminal conduct of the defendant did, in fact, cause serious harm;

That the defendant, in my view, did contemplate that her conduct would cause serious harm;

That the nature of the aggravated assault, that it's intentional.

And I also considered the factors under 97.2 [sic].

N.T. Sentencing Hearing, 2/1/2013, at 48-52. As already stated, the Commonwealth's Motion for Reconsideration was granted only to the extent that Young was required to report for incarceration, upon which she would be paroled in a matter of days.

The limits of an appellate review of a sentence are determined by statute. In relevant part, we may vacate the sentence if "the sentencing court sentenced outside the guidelines and the sentence is unreasonable." *See* 42 Pa.C.S. 9781(c)(3). There are four statutory factors we must have regard for in reviewing the certified record. They are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant, (2) the opportunity of the sentencing court to observe the defendant, including any presentence investigation, (3) the findings upon which the sentence was based, and (4) the guidelines promulgated by the commission. 42 Pa.C.S. § 9871(d)(1)-(4).

Further, our Supreme Court has provided a comprehensive statement regarding the review of a challenge to the discretionary aspects of a sentence in **Commonwealth v. Walls**, 926 A.2d 957 (Pa. 2007).

Our Court has stated that the proper standard of review when considering whether to affirm the sentencing court's determination is an abuse of discretion. **Commonwealth v. Smith**, 543 Pa. 566, 673 A.2d 893, 895 (1966) ("Imposition of a sentence is vested in the discretion of the sentencing court and will not be disturbed absent a manifest abuse of discretion."). As stated in **Smith**, an abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless "the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." **Id.**[FN2] In more expansive terms, our Court recently offered: "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." **Grady v. Frito-Lay, Inc.**, 576 Pa. 546, 839 A.2d 1038, 1046 (2003).

> FN2. As supported by both our case law mandating review of the record, **Smith**, 673 A.2d at 895, and the Sentencing Code requiring an appellate court to review the "record" in making the reasonableness determination described below, 42 Pa.C.S. § 9781(d), our scope of review on appeal is plenary, in other words, we may review the entire record.

The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is "in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it." **Commonwealth v. Ward**, 524 Pa. 48, 568 A.2d 1242, 1243 (1990); **see also Commonwealth v. Jones**, 418 Pa. Super. 93, 613 A.2d 587, 591(1992) (*en banc*) (offering that the sentencing court is in a superior position to "view the defendant's character, displays of remorse, defiance or indifference and the overall effect and nature of the crime."). Simply stated, the sentencing court sentences flesh-and-blood defendants and the nuances of

sentencing decisions are difficult to gauge from the cold transcript used upon appellate review. Moreover, the sentencing court enjoys an institutional advantage to appellate review, bringing to its decisions an expertise, experience, and judgment that should not be lightly disturbed. Even with the advent of the sentencing guidelines,[FN3] the power of sentencing is a function to be performed by the sentencing court. **Ward**, 568 A.2d at 1243. Thus, rather than cabin the exercise of a sentencing court's discretion, the guidelines merely inform the sentencing decision. **See also United States v. Salinas**, 365 F.3d 582, 588 (7th Cir. 2004).

> FN3. The sentencing guidelines were promulgated by the Pennsylvania Commission on Sentencing to be considered by and to aid courts in imposing sentences. **See generally Commonwealth v. Sessoms**, 516 Pa. 365, 532 A.2d 775 (1987). The guidelines were designed to bring greater rationality and consistency to sentences and to eliminate unwarranted disparity in sentencing. **Commonwealth v. Mouzon**, 571 Pa. 419, 812 A.2d 617, 620 n. 2 (2002) (plurality).

**Walls**, 926 A.2d at 961-62 (Pa. 2007).

Additionally,

> [U]nder the Sentencing Code an appellate court is to exercise its judgment in reviewing a sentence outside the sentencing guidelines to assess whether the sentencing court imposed a sentence that is "unreasonable." 42 Pa.C.S. § 9781(c), (d).

> Yet, what makes a sentence "unreasonable" is not defined in the statute. Generally speaking, "unreasonable" commonly connotes a decision that is "irrational" or "not guided by sound judgment." The Random House Dictionary of the English Language, 2084 (2nd ed. 1987); **see** 1 Pa.C.S. § 1903 (words to be construed according to their common and approved usage). While a general understanding of unreasonableness is helpful, in this context, it is apparent that the General Assembly has intended the concept of unreasonableness to be a fluid one, as exemplified by the four factors set forth in Section 9781(d) to be considered in making this determination. Indeed, based upon the very factors set out in Section 9781(d), it is clear that the General Assembly intended the concept of unreasonableness to

be inherently a circumstance-dependent concept that is flexible in understanding and lacking precise definition. ***Cf. United States v. Crosby***, 397 F.3d 103, 115 (2nd Cir. 2005) (explaining concept or reasonableness in context of sentencing matters).

Thus, given its nature, we decline to fashion any concrete rules as to the unreasonableness inquiry for a sentence that falls outside of applicable guidelines under Section 9781(c)(3). We are of the view, however, that the Legislature intended that considerations found in Section 9721 inform appellate review for unreasonableness. That is, while a sentence may be found to be unreasonable after review of Section 9781(d)'s four statutory factors, in addition a sentence may also be unreasonable if the appellate court finds that the sentence was imposed without express or implicit consideration by the sentencing court of the general standards applicable to sentencing found in Section 972, i.e., the protection of the public; the gravity of the offense in relation to the impact on the victim and the community; and the rehabilitative needs of the defendant. 42 Pa.C.S. § 9721(b). Moreover, even though the unreasonableness inquiry lacks precise boundaries, we are confident that rejection of a sentencing court's imposition of sentence on unreasonableness grounds would occur infrequently, whether the sentence is above or below the guideline ranges, especially when the unreasonableness inquiry is conducted using the proper standard of review.

***Walls***, 926 A.2d at 963-64.

With these statutory and Supreme Court mandated standards in mind, we turn our attention to the Commonwealth's allegations.

First, the Commonwealth argues that the severity of the crime itself, including the tragic harm caused to the victim, requires the imposition of a term of actual incarceration.[6]  However, such a sentence is not mandated by

---

[6] We emphasize that Young was sentenced to a term of incarceration.  She was, however, immediately paroled.

statute or by the guidelines. If the legislature intended all such aggravated assaults be punished by a mandatory term of actual incarceration, it clearly knew how to do so. Therefore, in this case, the law allows for the possibility of a sentence that does not require confinement.[7] If we credit the Commonwealth's argument, we would essentially be usurping the legislature's function by mandating incarceration. Additionally, we would be elevating the severity of the crime over all other factors.

Rather, Pennsylvania follows a policy of individualized sentencing, and the nature of the crime, including the effect on the victim, is a factor to be considered and weighed along with the other factors required by statute and our Supreme Court. Our review of the record demonstrates that the trial court did consider both the nature of the crime and its effect on not only the victim, but the victim's family as well. The fact that the trial court came to a different conclusion than the Commonwealth does not mean the trial court was either unreasonable or abused its discretion.

We next examine the Commonwealth's sub-arguments.

---

[7] In this portion of the appeal, the Commonwealth appears to be arguing that the immediate parole of Young was inappropriate. However, at the February 1, 2013 hearing on the motion for reconsideration, the Commonwealth acknowledged the trial court's authority to grant immediate parole in this situation. **See** N.T. Hearing, 2/1/21/3 at 52.

The Commonwealth has argued the trial court "focused almost exclusively on [Young's] circumstances that do not reflect the gravity of her crimes and their effect on her victim." Appellant's Brief at 17.

We begin by noting that it is self-apparent that Young's circumstances will necessarily focus on her and not on her victim. There is nothing inherently improper about considering a defendant's circumstances at sentencing. Further, if a sentence that departs from the guidelines in favor of the defendant is properly supported, it will, by necessity, be supported by factors that weigh heavily in favor of the defendant. What our Court must do in reviewing such a sentence is acknowledge that the statutes and guidelines allow for such departures and examine whether the record reflects the trial court reasonably considered the appropriate factors before significantly departing from the guidelines. We must also recognize that in circumstances such as are present instantly, the imposition of a sentence of parole and probation, while allowable, is and should be a rare happening. However, rarity does not equate to unreasonableness.

The Commonwealth further asserts that the trial court merely "paid lip service", **see** Appellant's Brief at 20, to the gravity of the offense. To support this argument, the Commonwealth has invited comparison of the instant matter to a number of prior cases: **Commonwealth v. Wilson**, 946 A.2d 767 (Pa. Super. 2008); **Commonwealth v. Daniel**, 30 A.3d 495 (Pa. Super. 2011); **Commonwealth v. Dixon**, 496 A.2d 802 (Pa. Super. 1985);

*Commonwealth v. Septak*, 518 A.2d 1284 (Pa. Super. 1986); and *Commonwealth v. Days*, 503 A.2d 1339 (Pa. Super. 1986). In each of these cases, our Court determined the sentence imposed by the trial court was impermissibly lenient and reversed. We find these comparisons to be unpersuasive and will briefly examine each case.

In *Wilson*, the defendant committed two separate robbery/assaults, hitting each victim in the face with a brick. Wilson was sentenced to an aggregate term of 11½ to 23 months' incarceration with immediate parole, followed by seven years of reporting probation. The trial court found treating Wilson's drug dependence to be of paramount importance. Notably, the defendant had prior arrests and convictions. Additionally, the trial court was aware of multiple open cases in Delaware, but had no idea as to their disposition. Our court noted that Wilson's aggressive behavior predated the two assaults at issue by a minimum of fifteen years and did not consider Wilson's drug history coupled with the aggressive criminal behavior associated with it. Importantly, the presentence investigation reported Wilson posed "a direct threat to the safety and welfare of others." *Wilson*, 946 A.2d at 772. The factual and historic background of the defendant in *Wilson* is far different from that of Young.

In *Daniel*, the defendant stabbed two people over an argument about a telephone, placing both victims in critical condition. Daniel lied about the circumstances, claiming he used a penknife when, in fact, the weapon was a

double-edged butterfly knife. Daniel had a history of "increasingly serious criminal behavior and continued to flaunt [sic] our laws, even after commission of the offense at issue." *Daniel*, 30 A.3d at 497-98. One of the subsequent crimes was possession of an unlicensed firearm that had the identification number removed. *Id*. at 498. Daniel had been sentenced to 11½ to 23 months' incarceration (immediate parole) followed by five years of probation. The trial court supported the sentence by stating Daniel had pled no contest, foregoing a self-defense claim. Our Court determined there was no evidence to support the possibility of a self-defense claim. Furthermore, although Daniel had expressed remorse at sentencing, our Court determined he was insincere given the subsequent criminal activity. Additionally, the trial court credited the fact Daniel committed the crimes as a result of drugs, he did not begin committing crimes until he was twenty and had family support. However, the fact that Daniel was twenty when beginning his criminal activity was not explained by the trial court and so was discounted, leaving only his drug addiction, which alone could not outweigh the other factors.[8]

In *Dixon*, the defendant pled guilty to third-degree murder, as determined by the trial court. He was sentenced to 11½ to 23 months' incarceration with credit for 9 months' time served, followed by 10 years of

---

[8] No mention was made of family support.

probation. Again, the trial court mistakenly credited the defendant with giving up a self-defense claim; and also stated, without supporting evidence that the crime would not have occurred but for Dixon being drunk. Unlike the present case, Dixon had a significant criminal history, including a prior manslaughter conviction, with his criminal activity becoming increasingly violent. The pre-sentence report specifically noted Dixon was a poor candidate for probation. Our Court noted the trial court rejected the presentence evaluation without explanation and in an arbitrary manner. Additionally, the trial court incorrectly asserted it could deviate from the guidelines as long as the reasons were put on the record. *Dixon*, 496 A.2d at 809. The trial court notably missed the requirement that the reasons had to be supported by the record and not otherwise unreasonable.

In *Septak*, the defendant pled guilty to unlawful restraint, terroristic threats and conspiracy regarding his involvement in a crime in which he and others held a person captive seeking $9,000 ransom. He was sentenced to four years of probation where the trial court refused to apply the deadly weapon enhancement. Additionally, by failing to apply the required sentence enhancement, the trial court also did not correctly determine the proper guideline ranges.

Finally, in *Days*, after being convicted of kidnaping, unlawful restraint, robbery, theft and possession of an instrument of crime, the defendant was sentenced to time served to 23 months' incarceration with one year of

concurrent probation. In reversing the sentence, our Court noted the trial court had not issued contemporaneous a written statement and gave as the sole reason for imposing the sentence the fact Days had twice been sexually assaulted in prison.

Here, there was no mandatory sentencing enhancement, no prior criminal convictions,[9] no statement in the pre-sentence report indicating a likelihood of continuing problems, and no subsequent criminal convictions.[10] Instantly, the certified record shows the trial court mentioned and considered all relevant factors, including those that favored Young as well as the nature and gravity of the crime.

While the Commonwealth has, properly, directed our attention to those cases that it believes support its position, we compare those cases to *Commonwealth v. Vanderhorst*, 501 A.2d 262 (Pa. Super. 1985), in which a sentence of ten years of probation was affirmed for a defendant convicted of voluntary manslaughter. Similar arguments were presented and our Court opined:

> The Commonwealth also argues that the sentencing court erred in basing its deviation from the guidelines on a finding that appellee had led a law-abiding life for a substantial period of time before the commission of the present crime. The lower

---

[9] In 1993, Young was arrested for aggravated assault and was subsequently acquitted. Therefore, her prior record score is zero.

[10] In 2013, Young was arrested for simple assault and was subsequently acquitted.

court did not, as the Commonwealth seems to contend, base its finding on a misunderstanding of the facts. The lower court was fully cognizant of appellee's previous criminal record, but considered the fact that all convictions, except one, were over ten years old.  Further, the most recent conviction was not for a crime of violence. Likewise, the Commonwealth's contention that appellee has not shown that he would benefit from a probationary sentence is without substance. The lower court did not abuse its discretion when it looked at appellee's past criminal record in conjunction with the fact that he had a good employment history and a supportive family and that he had rehabilitated himself following his bout of criminal activity during his late teens and early twenties. Such considerations were specifically allowed by the legislature.

**Vanderhorst**, 501 A.2d at 264 (citations and footnote omitted).

Distinguishing the Commonwealth's cases from the matter before and considering **Vanderhorst**, we believe the Commonwealth's argument does not compel us to vacate Young's sentence.

Next, the Commonwealth claims the trial court relied upon inaccurate and unsupported factors.  Specifically, the Commonwealth asserts that Young did not show remorse by pleading guilty, and she pled guilty only because the Commonwealth offered her a good plea bargain.  Also, the Commonwealth claims that Young perpetrated a fraud upon the trial court by submitting a letter at sentencing purporting to be from Young's mother, but which was actually penned by Young.

There are no factual findings to support the Commonwealth's bald assertion that Young pled guilty only because of the plea-bargain she was offered.  She was, in fact, offered a favorable plea bargain.  However, the fact remains that she voluntarily confessed twice prior to her guilty plea and

that she did express remorse in her written statement provided to the court at the original sentencing hearing. Additionally, virtually every defendant offered a plea agreement obtains some benefit from the agreement. By the Commonwealth's logic, no defendant would be showing remorse by pleading guilty; the acceptance of the agreement being evidence of only self-serving behavior. While we acknowledge there is an element of self-interest inherent in a guilty plea, that fact does not foreclose the existence of remorse. Here, the trial court observed the defendant at the guilty plea hearing, as well as two sentencing hearings, and concluded that Young's statement of remorse was sincere and worthy of consideration. We cannot second-guess this determination simply because it does not please the Commonwealth any more than we will second-guess a trial court's determination that displeases a defendant. *See Commonwealth v. A.W. Robl Transport*, 747 A.2d 400, 403 (Pa. Super. 2000) (Superior Court will not second-guess the trial court's credibility determinations on appeal.)

The next aspect of this argument is that the trial court unwittingly relied on a fraudulent letter of reference. Specifically, the Commonwealth contends that the letter presented to the court at the original sentencing hearing, purportedly from Young's mother, was in fact written by Young herself. As proof of this "fraud", *see* Appellant's Brief at 24, the Commonwealth asks us to compare the handwriting from a letter admittedly written by Young after the sentencing hearing, *see* Letter, 10/10/2013,

Supplemental Record, and the letter presented to the trial court. However, the Commonwealth has not alleged Young's mother did not *sign* the letter. Additionally, the Commonwealth has directed our attention to no mandate that a letter in support of a defendant come wholly from the hand of the signer. Accordingly, even accepting the Commonwealth's assertion that Young penned the bodies of both letters, it is no more conclusive proof of fraud than if Young had simply typed the letter her mother signed.

Finally, the Commonwealth argues the trial court based its sentence on impermissible factors. Specifically, the Commonwealth claims the trial court impermissibly: (1) double counted Young's zero prior record score, (2) considered Young's employment status, (3) considered the fact Young is the sole caregiver to two minor children, (4) credited the presentence recommendation, (5) determined Young was unlikely to reoffend, and (6) would be amenable to probationary treatment.

We agree that a trial court may not double count a zero prior record score as a reason to deviate from the guidelines. ***Commonwealth v. Smith***, 673 A.2d 893 (Pa. 1996). We do not believe the trial court double counted the prior record score. Rather, the trial court noted it had been specifically requested to consider a sentence of probation. ***See*** N.T. Sentencing, 2/1/2013 at 51. As such, the trial court considered the twelve statutory factors listed at 42 Pa.C.S. § 9722. Number 7 requires the court to consider the prior criminal history including whether the defendant "has

led a law-abiding life for a substantial period of time before the commission of the present crime." Section 9722 (7). We are not persuaded that the trial court improperly considered that which the legislature instructed the trial courts to consider. **See also Vanderhorst**, **supra** (not improper to consider legislatively mandated factors).

In the same light, 42 Pa.C.S. § 9725, governing sentences of total confinement, requires the trial court to consider "the history, character and condition of the defendant." Accordingly, we find no fault with the trial court's consideration of the fact that Young had been a productive member of the community, running her own beauty shop, employing others, mentoring others and providing a home for her children as sole caregiver.[11] All of these facts provide information regarding the history, character and condition of this defendant.

---

[11] The Commonwealth asserts that **Commonwealth v. Maleno**, 502 A.2d 617 (Pa. Super. 1985) held that consideration of a defendant's family is an improper factor. We disagree with that characterization. In **Maleno**, the trial court stated at sentencing, "we are getting sidetracked on the issue of prior record score, and we are not pinpointing what is important in this case, and that is the feelings of all these people [defendant's family]." **Maleno**, 502 A.2d at 620. In response, the decision of our Court stated it disagreed and that the trial court had misread the nature of the proceedings. Under the circumstances of **Maleno**, the trial court improperly placed far too great an emphasis on the feelings of the defendant's family, but we do not read that case to forbid consideration of the defendant's family, especially in light of the statutory mandates of Section 9725.

The pre-sentence report recommended imposition of a probationary sentence. All parties agreed that this recommendation of a sentence was unusual. The trial court noted this recommendation, but our review of the certified record leads us to conclude that the trial court considered all the relevant factors before it and did not give undue weight to this recommendation.[12]

Next, the Commonwealth argues that the trial court erred in concluding Young was unlikely to reoffend. Much of this conclusion was based on the trial court's understanding of the forces that caused this assault, recognizing that Young was responding to allegations one of her daughters had been sexually assaulted by a family member and concluding that such factors were unlikely to happen again.[13]

Here, the Commonwealth states Young has a demonstrated history of prior and subsequent assaultive behavior. There are a number of problems

_____

[12] The Commonwealth implies such a recommendation is improper, citing **Commonwealth v. Moore**, 583 A.d 1 (Pa. Super. 1990). **Moore**, however, does not hold that sentencing recommendations are forbidden. Rather, the sentencing court is not to abdicate its sentencing responsibility to any other person or group. The certified record in this matter clearly demonstrates the trial court did not abdicate its responsibility in sentencing Young.

[13] Although not specifically mentioned as such, this is also a factor to be considered under Section 9722, specifically, whether the defendant acted under a strong provocation as well as whether criminal conduct of the victim induced or facilitated the crime. 42 Pa.C.S. § 9722(3), (5). We note that the trial court determined Young was not acting in the heat of passion. **See** Trial Court Opinion at 12.

with this claim. First and foremost, the certified record contains no documentation regarding these assaults. Although the Commonwealth has provided a criminal abstract as an exhibit to its appellant's brief, we may only consider that which is contained in the certified record.[14] Second, an assault that took place after sentencing in this matter is irrelevant to sentencing considerations. As the incident had yet to occur by the time of sentencing, the trial court could not possibly consider it. Third, the Commonwealth admits in its brief, which is confirmed by the criminal abstract, that while Young had been charged with aggravated assault and related crimes in 1993, she was acquitted of those charges. Accordingly, Young was properly credited with a prior record score of zero, which the Commonwealth did not dispute at sentencing. The Commonwealth has provided no authority for the proposition that a sentencing court should adversely consider the fact a defendant has been exonerated of other crimes.

Similarly, the abstract notes Young was charged with simple assault and reckless endangerment in 2013, but was acquitted. In his Pa.R.A.P. 1925(a) opinion, the trial judge noted he was aware of the 2013 simple assault charge. In footnote 5, the trial court stated:

---

[14] "Simply put, if a document is not in the certified record, the Superior Court may not consider it." *Commonwealth v. Preston*, 904 A.2d 1, 7 (Pa. Super. 2006).

On October 1, 2013, the trial court lodged a detainer against [Young] for an alleged simple assault that occurred on August 28, 2013.[15] [Young] was ultimately arrested on October 23, 2013. As a result, [Young] has a pending violation of probation hearing. [Young] remains incarcerated on the trial court's detainer pending the disposition of the violation of probation hearing. At a minimum, these post-sentencing charges call into question, *inter alia*, the genuineness of [Young's] remorse at the sentencing hearing. At the worst, the charges *could* result in revocation of [Young's] parole and probation and the imposition of a new sentence.

Trial Court Opinion, at 11 n.5. Accordingly, the trial judge was demonstrably aware, post-sentence, of the allegations against Young but was waiting for the resolution of the charges to determine the effect upon the instant matter. We find no fault with such prudence.

Finally, the Commonwealth claims the trial court improperly determined Young would respond to probationary treatment without providing further explanation. However, the trial court noted in its opinion that the pre-sentence report recommended anger management treatment for Young. Further, at sentencing the Commonwealth could identify no treatment services that would be appropriate for Young that would require total confinement. **See** N.T. Sentencing Hearing, 2/1/2013 at 34-35. Accordingly, we see no error here.

_____

[15] The hearing on the motion for reconsideration of sentence took place on February 1, 2013, six months prior to the alleged August simple assault. We are unaware of the results of the violation of probation hearing.

A significant downward departure from the sentencing guidelines will necessarily raise a skeptical eye. However, absent statutory mandates, such deviations are allowed. Provided the trial court's decision is not unreasonable or an abuse of discretion, neither the trial court nor appellate courts may act as a super-legislative body by mandating incarceration based solely upon the gravity of a crime. Rather, the trial courts are obliged to consider each defendant individually and pronounce a sentence based upon the facts, findings, and circumstances presented. The trial court followed the law on sentencing. The certified record does not support the Commonwealth's claims that the trial court failed to consider the gravity of the crime or that it considered improper, fraudulent or unsupported factors. While another court might well have issued a different sentence, that is not proof of an abuse of discretion or an unreasonable process and result. As such, we find no abuse of discretion or error of law.

Judgment of sentence affirmed.

Judge Bowes joins the memorandum.

Judge Strassburger files a concurring statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/16/2014

- 26 -