**COMMONWEALTH of Pennsylvania,**
**Appellant**

v.

**Earl WILSON, Appellee.**

Superior Court of Pennsylvania.

Argued Dec. 5, 2006.

Filed April 4, 2008.

Joan Weiner, Asst. Dist. Atty., for Com., appellant.

Lori Mach, Philadelphia, for appellee.

BEFORE: JOYCE,* KLEIN and BOWES, JJ.

## OPINION BY KLEIN, J.:

¶ 1 Earl Wilson pled guilty[1] to two counts of robbery (F–1), two counts of burglary (F–1), and one count of possession of an instrument of crime (PIC) after he accosted two separate victims with a brick,[2] injuring one so badly that she lost almost all of her teeth and required staples in her head to close a gaping wound, and causing his other victim to suffer a black eye. The trial judge sentenced Wilson to concurrent terms of 11½—23 months imprisonment, plus 7 years reporting probation on each of the robbery charges.[3] Wilson was immediately paroled to a drug program after having served only 7 months time. The Commonwealth appealed, claiming that the trial court abused its discretion and that the sentence imposed was unreasonable because it was too lenient. Initially, this Court agreed with the Commonwealth and found the sentence unreasonably low.

¶ 2 On October 24, 2007, in a summary disposition, the Supreme Court of Pennsylvania vacated our Court's prior decision and remanded the instant case to be considered in light of *Commonwealth v. Walls*, 592 Pa. 557, 926 A.2d 957 (2007). After a thorough analysis of *Walls* and a reconsideration of the record, we still find that under the standards set forth in *Walls*, the sentence was unreasonable in that the court focused only on the defendant and did not take into consideration the seriousness of the crimes.

### The rationale of *Walls*

¶ 3 In reviewing the holding of *Walls*, the following principles were articulated:

¶ 4 1. The imposition of sentence is vested in the discretion of the trial court, and should not be disturbed on appeal for a mere error of judgment but only for an abuse of discretion and a showing that a

---

* Judge Joyce did not participate in the consideration or decision of this case.

1. Wilson later entered a guilty plea to unrelated counts of possession with intent to deliver. That sentence is not involved in this appeal.

2. The criminal acts were committed on April 22, 2005 and April 25, 2005. Therefore, the 5th Edition of the Sentencing Guidelines is applicable to the present case. *See Sentencing Guidelines Implementation Manual*, (5th ed.) (applies to all sentence for felonies and misdemeanors committed on or after June 13, 1997) and *Sentencing Guidelines Implementation Manual*, (6th ed.) (applies to all sentences for felonies and misdemeanors committed on or after June 3, 2005).

3. The burglary and PIC charges merged with the robbery counts for sentencing purposes.

sentence was manifestly unreasonable. 926 A.2d at 961.

¶ 5 2. Sentencing guidelines, while an aid in imposing sentencing, are advisory and nonbinding, and do not replace the key determination by the sentencing judge as to whether or not a sentence was reasonable. 926 A.2d at 962, 964.

¶ 6 3. The sentencing court must *consider* the sentencing guidelines, and the consideration must be more than mere fluff. Moreover, when imposing a sentence outside the guidelines, the trial judge must provide a written statement of the reasons for the deviation. 926 A.2d at 962–63, 964.

¶ 7 4. The concept of unreasonableness is a "fluid one," and "lacks precise boundaries." 926 A.2d at 963, 964. As noted in Justice Baer's concurrence, this creates a concern that sentencing may be entirely in the sentencing judge's discretion.[4] The Majority opinion affirms significant discretion in the trial courts. However, we do not believe that the Majority in *Walls* effectively does away with the power of an appellate court to determine "unreasonableness." The appellate courts have the benefit ·of reviewing sentences in many cases throughout the Commonwealth to enable them to analyze what is and what is not "unreasonable." 926 A.2d at 965.

¶ 8 5. Although "fluid" and "imprecise," the determination of unreasonableness by the appellate court must consider the statutory provisions of 42 Pa.C.S. § 9781(d). Those provisions require a consideration of (1) the nature of the crime and the history and characteristics of the defendant; (2) the trial judge's observation of the defendant and the contents of a presentence report; (3) the findings upon which the sentence was based; and (4) the sentencing guidelines.

## The specific holding of *Walls*

¶ 9 The Supreme Court in *Walls* did *not* state that this Court erred in reversing Walls' sentence. Instead, the Supreme Court remanded the matter to the Superior Court ". . . for a re-examination of the judgment of sentence in light of our decision today." 926 A.2d at 967. In other words, the Supreme Court did not say that the Superior Court erred in finding Walls' sentence unreasonable, just that it used an improper standard.

¶ 10 After setting forth the general principles above, the *Walls* Court stated, "With clarification of the proper standard of review, which includes the standard of unreasonableness under the Sentencing Code, we turn to the specific arguments raised by the parties concerning the Superior Court's vacatur of Walls' sentence." 926 A.2d at 964.

¶ 11 The errors found by the Supreme Court in *Walls* were the following:

¶ 12 1. The Superior Court erred in its determination that a trial judge is *bound* by the sentencing guidelines, rather than treating them only as valuable advisory guidelines that must be respected and considered and may provide an essential starting point. 926 A.2d at 965.

¶ 13 2. The Superior Court may have erred in suggesting that a sentence must still be the "minimum possible confinement," as that standard was replaced by the 1978 amendment of the Sentencing

---

4. In his concurring opinion, Justice Baer wrote:
   I fear that the decision will be interpreted to provide near limitless discretion for trial courts in the sentencing context. The Majority's decision may indeed negate the in-tended effect of the guidelines, which, as the Majority acknowledges, "were designed to bring greater rationality and consistency to sentences and to eliminate unwarranted disparity in sentencing." 926 A.2d at 968.

Code. 42 Pa.C.S. § 9721(b). 926 A.2d at 965.

¶ 14 3. The Superior Court erred in finding that the sentencing court in *Walls* had a policy of imposing the maximum sentence regardless of the individual circumstances of the case. 926 A.2d at 966.

¶ 15 4. The Superior Court erred in reweighing the sentencing court's factors, including the age of the victim, the position of trust and responsibility Walls had to his granddaughter, the fact that the victim of the sexual assault was his granddaughter, and the fact that Walls characterized the sexual assaults as "accidents." Thus, the Superior Court erred in concluding that these factors were not "uncommon" in crimes of this kind. 926 A.2d at 966, 967.

■ ¶ 16 5. While departing from the guidelines, the Supreme Court rejected the Superior Court's conclusion that the sentencing court disregarded the guidelines. Instead, the Supreme Court held that the sentencing court did consider the guidelines and "departed therefrom for reasons that were not foreclosed by the law," and did consider the general standards for sentencing of 42 Pa.C.S. § 9721(b). 926 A.2d at 967.

**The Application of *Walls* to the specific facts of this case.**

■ ¶ 17 Under 42 Pa.C.S. § 9781(c)(3), it is our obligation to determine whether Wilson's sentence, which is outside the sentencing guidelines, is unreasonable. After considering the facts of the instant case, and applying the Supreme Court's decision in *Walls*, we conclude that the sentence was unreasonable.

¶ 18 In light of the unusually brutal nature of the robberies, which are classified as first-degree felonies, the fact that Wilson poses a continuing threat to the public, Wilson's past aggressive conduct, the admitted emotional and physical injuries suffered by the victims,[5] and the applicable guideline ranges, our determination is that the sentence was unreasonably low. We are, therefore, compelled to vacate and remand for resentencing.

■ ¶ 19 The nature and circumstances of the events that transpired during the robberies committed by Wilson, the trial court's findings, *see* 42 Pa.C.S. § 9781(d)(1), and the unequal weight that the sentencing court gave to the general factors under section 9721(d), compel us to conclude that the sentencing court's exercise of judgment was unreasonable. Specifically, the sentencing court focused almost exclusively on the fact that Wilson's actions were the result of his drug addiction and that Wilson acknowledged his problem and wanted to be treated for it.[6]

---

5. The record contains evidence not only of the immediate impact the robberies had on the victims, but also the long-term repercussions of those events on them. Specifically, his female victim felt the need to move from Center City Philadelphia to the suburbs due to her fears. This move necessitated her to have to buy a vehicle so that she can travel daily into the city for work where she walks the city streets in "constant fear." Victim Impact Statement of Rebecca Esh, 10/18/2005; N.T. Sentencing, 11/22/2005, at 15. Moreover, his male victim indicated that since the attack he has become fearful, is uncomfortable walking around his own city neighborhood, and fears for his entire family's safety. *Id.* at 14–15.

6. Because sentencing is a discretionary matter, there is no automatic right to appeal such a claim. Rather, before our court will hear a sentencing claim on its merits, an appellant must first set forth in its brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of the sentence. Pa.R.A.P. 2119(f); *Commonwealth v. Ritchey*, 779 A.2d 1183, 1185 (Pa.Super.2001). Our review of the record convinces us that the Commonwealth has complied with this requirement. Moreover,

As a result, the court went out of its way to impose a less-than-mitigated-range sentence so that it retained the authority to immediately parole Wilson to a drug program.

### Facts of the Instant Case

¶ 20 Wilson accosted his first victim as she was entering her apartment. He pushed her inside the vestibule, demanded money, hit her repeatedly in the face with a brick and took her purse. She suffered severe lacerations to her skull (requiring staples in her head to close the gash) and lost most of her teeth as a result of the incident. Wilson followed his second victim into his apartment where he demanded money while threatening him with a brick.[7] Wilson was arrested the following day; both the brick and the first victim's cell phone were in his possession. Both victims positively identified the defendant.

¶ 21 During the guilty plea hearing, the D.A. read from his notes an interview the police had had with Wilson immediately following his arrest for the robberies. During that interview, Wilson explained that he attacked his victims in order to get money to feed his crack cocaine habit. He also stated that he badly wanted help for his drug problem and that he was very sorry and did not mean to hurt anyone. N.T. Guilty Plea Hearing, 8/16/2005, at 14. Wilson also indicated during this interview that he found the brick he used to attack his first victim "lying outside on the ground down the street from her house" and that he thought he "hit her in the head and face" with the brick "two or three" times. *Id.* Moreover, after running up to

his female victim and not being satisfied with her answer that she did not have any money, he then took the "brick and start[ed] swinging at her." *Id.* at 12. When she started screaming louder, he "swung the brick a couple more times" until she fell on the floor in the hallway of her apartment building. *Id.* at 13.

### Discussion

¶ 22 A. "Unreasonableness" Inquiry under 42 Pa.C.S. § 9721(b)

1. Nature and Circumstances of Offense/History and Characteristics of Wilson

■ ¶ 23 The circumstances surrounding the robberies Wilson committed on his victims were brutal. Specifically, Wilson repeatedly bashed his first victim in the face with a brick. Even after she indicated that she did not have any money, he continued to brutalize her by hitting her with the brick in the head and face two or three more times. He only ceased his assault when she finally fell to the ground. With regard to his second victim, Wilson deliberately followed him to into his apartment and violently pushed his way through the door despite the victim's best efforts to keep him out. In an attempt to leave the crime scene, Wilson shoved his second victim, hitting him in the face with the brick and causing him to suffer a black eye. The Commonwealth highlighted at sentencing the facts that Wilson posed a danger to the community and was a man who clearly evidenced attitude problems and exhibited aggressive conduct in addition to

the Commonwealth's argument that the trial court imposed an excessively lenient sentence and did not justify its sentence with sufficient reasons raises a substantial question in this case. *Commonwealth v. Childs*, 445 Pa.Super. 32, 664 A.2d 994 (1995). Therefore, we permit the Commonwealth's appeal.

7. Apparently, in an attempt to leave the second victim's apartment, Wilson shoved him, hit him with the brick and caused him to suffer a black eye.

being a drug addict. N.T. Sentencing, 11/22/2005, at 16, 19.

¶ 24 With regard to Wilson's personal history and characteristics, it was clearly established that he was a drug addict who was reduced to attacking his victims in order to obtain money to feed his habit. Not a stranger to the legal system, Wilson tendered guilty pleas for two unrelated drug offenses that occurred less than two months prior to the instant robberies. While Wilson was penitent and remorseful for the harm he had caused to his robbery victims, defense counsel adamantly argued the crimes were "drug driven" and that addressing his client's drug problems was of paramount importance in the sentencing process. Moreover, the court heard testimony from one of Wilson's prior employers in the Job Corps who was allegedly "impressed" by him.

¶ 25 However, the person conducting Wilson's presentence investigation also noted that he had attitude problems at the Job Corps position and had gotten into an argument with another employee resulting in his departure from the job site soon after beginning his employ. *Id.*

### 2. The Court's Opportunity to Observe Wilson/Presentence Investigation Report

¶ 26 As is the case in most sentencing matters, the trial court had the opportunity to observe the defendant first-hand. The court conducted a full colloquy with Wilson during his guilty plea hearing. In observing Wilson, the court found him to be a penitent defendant with deep-rooted drug issues.

¶ 27 The trial court also relied upon a pre-sentence investigation report (PSI)

and a chemical dependency evaluation during the sentencing process. The investigator who prepared the PSI summarized his evaluation of Wilson as follows:

> The present offense is serious in nature and was directed against a person. **As [a] result of his actions it would appear that he does pose a direct threat to the safety and welfare of others.** The Defendant was gainfully employed but his drug and alcohol abuse situation was out of control. The Subject has a history of being homeless and was living on the street, at times. The Subject should seek out and find any opportunity to receive drug and alcohol treatment, while in custody. Eventually, when released he will require very strict supervision with regular urine screening employed in an effort to enforce sobriety. If a drug and alcohol problem is detected, by the supervising officer, the Subject should be placed in an appropriate treatment facility.

Presentence Investigation Report, 10/6/2005, at 5–6 (emphasis added). Thomas E. Nelson, the investigator who prepared Wilson's PSI, indicates that as an adult Wilson had "5 arrests with 2 convictions and no commitments. [Wilson was] in open status for the arrest of 1/4/05, 1/12/05, and 6/13/91 in Delaware." PSI, 10/6005, at 1. However, whether Wilson, in fact, had prior convictions resulting either from his Delaware arrests or any other legal infractions in another jurisdiction is never clarified. Nonetheless, the court ascribed Wilson a PRS of zero.[8]

### 3. Trial Court's Findings

¶ 28 In its Pa.R.A.P.1925(a) opinion, the trial court justifies its less-than-mitigated-

---

8. While these are obviously critical facts to be ascertained in order to ascribe Wilson a proper PRS, we do recognize that it was the Commonwealth's obligation to notify the sentencing judge in writing if it wished to challenge the accuracy of any information contained within the PSI. *Id.*

range sentences on the burglary and robbery convictions by stating that they were based "in light of the facts of the instant case, the defendant's background, and the requirements of the Sentencing Code." Trial Court Opinion, 4/28/2006 at 3. Specifically, the court believed that the defendant, who pled guilty, accepted responsibility for his actions and appropriately apologized to the court and the victims. The court found the defendant's violent actions were a product of his drug addiction; the defendant admitted his drug problem and expressed a strong desire to enter a drug treatment program. At sentencing, the trial judge issued an oral statement which sufficed to serve as the "contemporaneous written statement" that is required when he or she departs from the guidelines. *See Commonwealth v. Frazier*, 347 Pa.Super. 64, 500 A.2d 158 (1985) (statement must contain permissible range of sentences under guidelines and, at least in summary form, factual basis and specific reasons which compelled court to deviate from sentencing range).

¶ 29 Specifically, the court gave the following reasons for its significant downward-departure from the guidelines, stating that it fashioned its sentence based on the facts that:

- Defendant "accepted responsibility in all of these matters" by pleading guilty and by apologizing;

- Defendant's conduct was supposedly drug driven and, thus, the court "need[ed] to make an effort to address the underlying problem[;]" and

- Defendant had been in the Job Corps and had supposedly "impressed" his employer.

N.T. Sentencing, 11/22/05, at 20.

¶ 30 These reasons not only fall short of justifying a less-than-mitigated sentence, but ignore the fundamental principles and factors that are to guide our sentencing courts as was outlined by our Supreme Court in *Walls*.

¶ 31 To further justify its sentence, the sentencing court indicates in its Pa.R.A.P. 1925(a) opinion that it felt powerless to supervise Wilson's drug treatment if he were to be placed in a state prison. This "second guessing" of the ability of the state correctional system to deal with drug problems does not provide justification for this lenient sentence. Moreover, it was not made in a contemporaneous written statement. *See McIntosh, supra*[9] (trial court's after-the-fact statement in Rule 1925(a) opinion in justification of its sentence was insufficient to satisfy mandate of section 9721(b) statement).

¶ 32 Essentially the court found that due to overcrowding, state prisons cannot address or cure an inmate's drug dependency issues. Thus, the court felt compelled to immediately parole Wilson so that he could

---

9. In *McIntosh*, the Defendant's petition for allowance of appeal filed with the Supreme Court included the claim that our Court incorrectly applied form over substance, and in essence substituted its judgment for that of the sentencing court when it vacated Defendant's sentence as "excessively lenient." Interestingly, our state's highest court nevertheless, in a *per curiam* order, affirmed this Court's decision to reverse *McIntosh*'s sentence, reversing only the fact that our Court had ordered resentencing to be before a different sentencing judge. While we are still unsure as to whether a *per curiam* Supreme Court order as in *McIntosh*, has any binding effect on our Court, we nonetheless find the outcome in *McIntosh*, only a mere three months before the Supreme Court's pronouncement in *Walls, supra*, notable. *See Commonwealth v. Nobalez*, 805 A.2d 598, 601 (Pa.Super.2002) (*per curiam* order affirming or reversing lower tribunal signifies Pennsylvania Supreme Court's agreement or disagreement with lower tribunal's final disposition of matter on appeal).

receive treatment outside the prison system.[10] The trial court also stated that it seriously considered the victims' injuries (physically and psychologically) and was also aware of the need to protect the public. The court warned the defendant that if he violated his probation, it would have no reservations sending him to state prison. While the court acknowledges that it did consider the other factors in section 9721 in fashioning it sentence, the effect that those factors had on the actual sentence indicates that the court's comments amounted to little more than lip service.

### 4. Sentencing Guidelines

¶ 33 Both robberies committed on the victims are classified in the Sentencing Code as first-degree felonies, the most serious of crimes. The offense gravity score for the robbery charge on Wilson's female victim who suffered serious bodily injury is a 12 and on his male victim is a 10; Wilson's prior record score was a 0. The Commonwealth suggested a 6–15 year sentence; the defense requested a sentence that would allow Wilson to ultimately be paroled to a drug program. The trial judge sentenced Wilson to concurrent terms of 11½—23 months' imprisonment, plus 7 years' reporting probation on each of the robbery charges. Because the sentence of imprisonment on each charge totaled less than two years, the trial court retained the authority to grant parole. Accordingly, Wilson was immediately paroled to a drug program after only serving 7 months.

¶ 34 Under the Sentencing Guidelines, a standard-range sentence for each robbery count would be 66–84 months (+/12) (applying deadly weapon enhancement) and 40–54 months (+/12) (applying deadly weapon enhancement), respectively. Therefore, Wilson's actual sentence of seven months was less than 20% of even the mitigated range (36–54 months & 10–24 months) for both robberies.

¶ 35 The trial court acknowledged that it was unable to definitively ascertain whether Wilson's numerous prior arrests in Delaware that occurred over the last fifteen years ever resulted in convictions.[11] While the court ultimately ascribed a PRS of zero to Wilson, the court was aware that Wilson's prior arrests included, "criminal mischief, assault in the first degree, offensive touching, unlawful sexual intercourse, [and] terroristic threatening [sic]," N.T. Sentencing, 11/22/2005, 18, and that, according to the Commonwealth, this criminal record represented "the story of someone who has received multiple arrests for what appears to be aggressive conduct." Id. at 18–19.

¶ 36 In Walls, our Supreme Court stated that a sentence may be deemed "unreasonable" on appeal if our Court finds that it was imposed without considering the general standards espoused in section 9721 of our Sentencing Code. Specifically, that section guides a sentencing court to consider the following principle:

> [T]he sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on

---

10. What the court failed to explain, however, is why Wilson did not serve any county time. Even Wilson's own counsel noted that his client made substantial progress while incarcerated in county prison awaiting trial on this case. N.T. Sentencing, 11/22/05, at 10.

11. A report prepared by the presentence investigator indicates that as an adult Wilson had "5 arrests with 2 **convictions** and no commitments. [Wilson was] in open status for the arrest of 1/4/05, 1/12/05, and 6/13/91 in Delaware." PSI, 10/6005 at 1 (emphasis added).

the life of the victim and on the community, and the rehabilitative needs of the defendant.

42 Pa.C.S.A. § 9721(b). In light of the standards set forth under section 9721, we find additional support for our conclusion that Wilson's sentence should be vacated.

¶ 37 Here, the court only focused on Wilson's drug dependence and stated penitence and downplayed the seriousness of Wilson's crimes. While the court indicated that it considered the victims' serious injuries as well as the importance of protecting the public, the sentence itself is not justified in light of the other factors attendant to this serious crime. The sentencing court focused on the fact that Wilson is drug-dependent and that his actions on the night of the crime were most likely the result of his need to get money to buy more drugs. However, many crimes are committed by drug-dependant individuals, but drug dependence alone does not justify leniency to this degree, particularly when it is accompanied by aggressive behavior.

¶ 38 Here, the court did not but should have recognized the brutal nature of the acts Wilson committed. Moreover, as the presentence investigative reporter noted, Wilson continues to pose a threat to the safety and welfare of others. His prior multiple arrests indicate that his aggressive behavior dates back at least fifteen years (he has a 1991 arrest from Delaware). In addition, while Wilson may have chosen to plead guilty to these crimes, that fact alone should not drive a sentencing court's decision to depart downward so dramatically from a mitigated-range sentence. As our Sentencing Code recognizes, the guidelines apply to *all* sentences alike, whether imposed following a plea or trial. *See* 204 Pa.Code § 303.1; *Commonwealth v. Styles*, 812 A.2d 1277 (Pa.Super.2002).

¶ 39 We believe that the sentencing court ignored the fact that Wilson committed two robberies which included inflicting significant, unnecessary injuries on the victims. The injuries make this more serious than a "typical" robbery, and therefore warranted a harsher sentence. In the present case we have two victims who were not only emotionally scarred, but one who was physically brutalized with a brick. While we understand that the circumstances of each case will need to be independently examined to determine exactly what is the "norm" for a given crime, we believe that Wilson's sentence was much too lenient based on the facts of this case. Accordingly, we find the sentence was unreasonable and should be vacated.

## Conclusion

¶ 40 Because it is clear that the punishment Wilson received for his crimes was unreasonable and inappropriate based upon the facts of the case, we must vacate Wilson's sentence and remand for resentencing. *See Walls, supra.* In so holding, we recognize that the sentencing court was free to reject the guidelines and deviate from them. However, to do so, the court was required to justify its sentence under the Code based upon a reasoned decision. Here, Wilson violently attacked his victims, knocked out almost all of one victim's teeth with a brick and required her to get stitches on her scalp, and both victims expressed in impact statements that they not only sustained physical injuries, but also suffered and continue to suffer serious psychological and emotional problems as a result of Wilson's actions. As punishment for his actions, Wilson was paroled after a mere seven months in prison. We cannot find such sentence to be reasonable. In fact, as the Commonwealth notes, the present case illustrates how a sentencing court can manipulate the fundamental norms underlying our sentencing process in order to fashion a sentence that caters

exclusively to a defendant's rehabilitative needs, almost to the exclusion of relevant and important sentencing factors that are required to be considered.

¶ 41 Wilson poses a threat to the community; he is a violent and aggressive individual and his crimes were severe compared to a "typical" robbery case—his punishment should fit the crime. These are factors delineated in the Sentencing Code, which a trial court is required to consider when fashioning a defendant's sentence. *Walls, supra.* Here the trial court fell short of giving due weight to these factors compared with its desire to elevate Wilson's rehabilitative needs above all else. Where a sentencing court has failed to consider the importance of the factors in our Sentencing Code as well as the guidelines established by our Sentencing Commission and fashioned a sentence which is clearly unreasonable to a reviewing court, we must vacate. *See Commonwealth v. McIntosh,* 911 A.2d 513 (Pa.Super.2006) (where sentencing court was "oddly deferential" to defendant and concern for defendant's rehabilitative needs outweighed court's consideration of section 9718 factors, sentence was unduly lenient and properly vacated on appeal), *aff'd in part and rev'd in part on other grounds,* 592 Pa. 7, 922 A.2d 873 (2007).

¶ 42 We recognize that the definition of "reasonableness" is fluid and lacks precise boundaries. *See Walls,* at 963 ("concept of unreasonableness [is] to be inherently a circumstance-dependent concept that is flexible in understanding and lacking precise definition."). However, in our judgment as experienced appellate judges who have reviewed many sentences for similar crimes, we find that this sentence falls outside the "bell shaped curve" of sentences in this Commonwealth and is unreasonable.

¶ 43 Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.