J-A08037-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TIREK BROOKS | : | No. 973 EDA 2023 |

Appeal from the Judgment of Sentence Entered November 29, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0000975-2021,
CP-51-CR-0000976-2021

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TIREK BROOKS | : | No. 974 EDA 2023 |

Appeal from the Judgment of Sentence Entered November 29, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0000975-2021,
CP-51-CR-0000976-2021

BEFORE:  BOWES, J., OLSON, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED JUNE 25, 2024**

The Commonwealth appeals the judgment of sentence entered following

Tirek Brooks' convictions for three firearms violations (persons not to possess

firearms, firearms not to be carried without a license, and carrying firearms

on public streets or public property in Philadelphia); two counts each of

terroristic threats and simple assault; and one count each of possession of an

instrument of crime and criminal mischief.[1] The Commonwealth maintains that the trial court abused its discretion by sentencing Brooks to 11½ to 23 months of house arrest and 15 years reporting probation. We vacate the judgment of sentence and remand for resentencing.

The trial court aptly summarized the evidence presented at Brooks' bench trial:

> [The Commonwealth] presented three witnesses at trial: Ms. Joanne Cox . . ., Mr. Larry Trotman . . ., and Police Officer Mark Rothman (hereinafter "PIO Rothman"). [Trotman] is the grandson of [Cox].
>
> [Cox] testified that she knew [Brooks] as her across the street neighbor. N.T. Trial, 5/25/22, at 16-17. On August 5, 2020, while in her home, she saw [Brooks] shooting at [Trotman's] car on the street in front of her house. *Id.* at 19-20. After [Brooks] stopped shooting the car and walked to his house, [Cox] and [Trotman] went outside to examine the car, which "was all shot up" with about "20 bullets in the front of the car and the windows." *Id.* at 25-26. [Cox] testified that she went back inside her house while [Trotman] stayed outside to examine the damage. *Id.* at 27. From the house, she saw [Brooks] return to the car where he pointed a gun at [Trotman's] "head a couple inches away." *Id.* at 29-30. She testified that she heard [Brooks] repeatedly "screaming" that he would shoot [Trotman]. *Id.* at 31. [Trotman] walked toward the house where [Cox] was while [Brooks] followed him "all the way to the house with the gun to his head the whole time." *Id.* at 32-33. [Cox] stated that at some point [Brooks] shifted his focus to her and pointed the gun at her head while she was ten to twenty feet away while saying "Ima shoot you." *Id.* at 36-37. Both complainants managed to get through the open door and closed the door with [Brooks] still standing outside. *Id.* at 37-38. [Cox] testified that she

---

[1] 18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1), 6108, 2706(a)(1), 2701(a), 907(a), and 3304(a)(5), respectively.

called the police and that [Brooks] was "on his porch" when the police arrived on scene. *Id.* at 38. She saw [Brooks] throw a drum magazine from the gun "in the yard." *Id.* at 38-39. [Trotman] testified in a manner that corroborated the testimony of [Cox]. Regarding his car, he added that "the insurance company said they can't fix it." *Id.* at 67.

Officer Rothman testified that he was one of the responding officers and that, upon his arrival on the scene, he saw [Brooks] throw the drum magazine. *Id.* at 79-80. He arrested [Brooks] and recovered a gun "in his back pocket." *Id.* at 81. Neither the gun nor the drum magazine had any bullets left in them. *Id.* at 89. Following this testimony, counsel for both parties agreed to a stipulation that [Brooks] did not have a license to carry and that he was "6105 ineligible." *Id.* at 94.

Rule 1925(a) Opinion, filed 7/14/23, at 1-3. The court found Brooks guilty of the above-referenced offenses.

At the initial sentencing hearing, the Commonwealth requested a continuance because the assigned attorney was sick with COVID-19. *See* N.T., Sentencing, 7/26/22 at 7-8, 9. The court granted the continuance and modified Brooks' bail from a $1 million/10% bond to a $1 million unsecured bond because Brooks had "been in custody too long." *See id.* at 34, 39. It ordered inpatient treatment for drug and mental health treatment at Kirkbride Center. *See id.* at 39-40; Bail Bond, filed 7/26/22.

At the second sentencing hearing, the Commonwealth presented testimony from one of the victims, Joanne Cox. She stated that she moved from her home the same day of the shooting because she felt threatened in her home. *See* N.T., Sentencing 11/29/22, at 9. The Commonwealth explained that because Cox abruptly moved, she had to leave many of her

belongings in the home, amounting to approximately $10,000. *Id.* at 53, 57. The second victim, Larry Trotman, was not present at the sentencing because he had to attend classes at college. However, the Commonwealth notified the court that Trotman had to get a $9,000 loan to replace his car. *Id.* at 16. The Commonwealth informed the court that the Sentencing Guidelines for the lead charge of persons not to possess firearms was 72 to 90 months' incarceration based on Brooks' prior record score of five. *See id.* at 6. Both parties referenced Brooks' mental health, and the Commonwealth maintained that Brooks could receive treatment at "different state facilities[.]" *Id.* at 29.

The Commonwealth also noted Brooks' history with narcotics, as detailed in the presentence investigation report, and stated that he had used Percocet three to four times a day before the incident. *See id.* at 26. It also told the court about Brooks' extensive criminal history from 2005 to 2017, including convictions for firearms violations and possession with intent to deliver. *Id.* at 20-24. The prosecutor explained that these convictions had resulted in sentences of incarceration and probation, which was revoked. *Id.* The Commonwealth emphasized that the instant case would be Brooks' fourth firearms conviction.

Brooks presented mitigation evidence. Brooks' fiancée, Anneisha Henderson, testified that on the day of the incident, she told the police that "[Brooks] [was] not [in] his right state of mind." *Id.* at 30, 37. She said that Brooks' drug addiction began two months before the incident. *Id.* at 41.

According to Henderson, since attending Kirkbride, Brooks has been happier and shown positive changes. *Id.* at 42-43.

Brooks expressed remorse and explained that at the time of the incident, he was "getting high" every day. *Id.* at 50. He also told the court about the various narcotics he consumed at the time of the incident, including Xanax and Percocet. *Id.* at 51-52. Defense counsel also informed the court that Brooks had completed treatment at Kirkbride. *Id.* at 47.

The court sentenced Brooks to 11½ to 23 months of house arrest and 15 years of reporting probation. It did not grant credit for time served. *Id.* at 58. The court also ordered Brooks to pay $20,000 in restitution for the loss of Trotman's car and Cox's property. The court explained its reasons for the sentence as follows:

> This is probably one of the most difficult cases I had to do a sentence on, right, because if we're dealing with somebody who I think finding enjoyment and shows no remorse; if I'm dealing with a person that I think will just re-offend, because that's their position, then I wouldn't hesitate to do what the Commonwealth has asked.
>
> However, I do find mitigation in the fact – and I'm not going to give you any time credit for the two years that you served, sir. All right. Those years are gone.
>
> You served two years in custody and you are getting zero time credit for this.
>
> I do find mitigation in the fact that I believe that mental health played a very large role in this case.
>
> I find mitigation in the fact that I believe mental health, coupled with drug addiction issues played another large role in this case.

I'm conflicted, because with drug treatment issues, most people that are struggling with drugs, they are perfectly happy with hurting themselves and they don't hurt other people. Prostitution – all these other crimes against property.

So, again, this brings me conflict. I also find mitigation. I don't know that I mentioned it, but I believe that Mr. Brooks has demonstrated some real remorse. And I note that he's addressed the drug addiction issue.

I don't know how he is exactly handling the mental health component of an ongoing nature. So that's obviously something that needs to be addressed.

And I looked at the long term needs in terms of, you know – I heard what the victim had to say. And my heart truly does go out to the victims.

My job is to figure out what serves the best interest of all involved, including the victim; including the defendant; including the defendant's family; including society as a whole.

I think what he needs is a very long period of monitoring, but I don't know that incarceration further than what he's already had would serve any purpose other than the pound of flesh that is being sought.

*Id.* at 57-59.

The Commonwealth filed a timely post-sentence motion, which the trial court denied by operation of law. *See* Motion for Reconsideration of Sentence, filed 12/8/22; Order, filed 4/10/23. This timely appeal followed.

The Commonwealth raises one issue before this Court:

Did the court below abuse its discretion by sentencing Brooks to 11.5 to 23 months' incarceration followed by a probationary tail for his fourth firearms conviction where the guidelines called for a minimum sentence of at least six years' incarceration for merely possessing a weapon whereas Brooks repeatedly fired a weapon with a large-

capacity magazine and threatened to murder two innocent bystanders?

Commonwealth's Br. at 1.

The Commonwealth's issue goes to the discretionary aspects of Brooks' sentence. There is no automatic right to appellate review of such issues. **Commonwealth v. McCain**, 176 A.3d 236, 240 (Pa.Super. 2017). Before we review the merits of such a claim, we must determine:

> (1) whether the appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. 720; (3) whether the appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

**Id.** (citation omitted).

The Commonwealth has met all these requirements. It filed a timely notice of appeal, preserved its issue in a post-sentence motion, and included a Rule 2119(f) statement in its brief. It also raises a substantial question that the sentence "is inconsistent with 42 Pa.C.S. § 9721(b), which requires the sentence imposed to be consistent with the gravity of the offense with respect to its impact on both the victim and the community, as well as the protection of the public." Commonwealth's Br. at 11; **see Commonwealth v. Clarke**, 70 A.3d 1281, 1287 (Pa.Super. 2013) (claim that trial court failed to consider all factors as required by Section 9721(b) raised a substantial question). Its further claim that "Brooks' sentence is substantially below the sentencing guidelines' recommendation of 72-90 months' incarceration despite multiple

aggravating circumstances that significantly outweigh the mitigating circumstances relied on by the lower court" likewise states a substantial question. Commonwealth's Br. at 10; **see Commonwealth v. Davis**, 737 A.2d 792, 798 (Pa.Super. 1999) ("[a] claim that the sentencing court imposed an unreasonable sentence by sentencing outside the guideline ranges raises a substantial question") (internal quotations omitted). We now consider the merits of the Commonwealth's arguments.

The Commonwealth maintains that the sentence was a significant departure from the Sentencing Guidelines and was not "consistent with . . . the gravity of the offense as it relates to the impact on the life of the victim[s] and on the community." Commonwealth's Br. at 20 (citing 42 Pa.C.S.A. § 9721(b)). It points out that the instant case is Brooks' fourth firearms conviction, giving him a prior record score of five. It further notes numerous aggravating factors, including the type of firearm Brooks used, his repeated firing of a weapon in the open, his threats to shoot the victims, and that his acts left the victims "emotionally scarred." **Id.** at 21.

Regarding Brooks' mental health and substance abuse issues, the Commonwealth argues that they are not mitigating factors since the firearms statute prohibits those with mental health and substance abuse issues from possessing firearms. The Commonwealth also maintains that we should give minimal deference to the court's observance of Brooks in court because, in the Commonwealth's view, it appears the court decided to release Brooks from jail because of its opinion that Brooks had been in jail too long. Finally, the

Commonwealth directs our attention to **McCain** and **Commonwealth v. Wilson**, 946 A.2d 767 (Pa.Super. 2008). It points out that in both cases, we vacated the judgment of sentence based on the trial court's significant downward departure from the Sentencing Guidelines.

Sentencing is a matter for the sound discretion of the trial court. **See Commonwealth v. Bankes**, 286 A.3d 1302, 1307 (Pa.Super. 2022). An abuse of that discretion occurs where "the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." **Id.** (citation omitted). The court should consider "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). It should also consider the Sentencing Guidelines, which "are purely advisory in nature." **Commonwealth v. Yuhasz**, 923 A.2d 1111, 1118 (Pa. 2007). If the court imposes a sentence outside the Sentencing Guidelines, it "shall provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines[.]" 42 Pa.C.S.A. § 9721(b).

This Court may vacate a sentence if "the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable." 42 Pa.C.S.A. § 9781(c)(3). "'A sentence may be found unreasonable if it fails to properly account for' the four statutory factors of Section 9781(d)." **Commonwealth v. Pisarchuk**, 306 A.3d 872, 881 (Pa.Super. 2023) (quoting

*Commonwealth v. Sheller*, 961 A.2d 187, 191 (Pa.Super. 2008)). These four factors include:

> (1) The nature and circumstances of the offense and the history and characteristics of the defendant.
>
> (2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.
>
> (3) The findings upon which the sentence was based.
>
> (4) The guidelines promulgated by the commission.

42 Pa.C.S.A. § 9781(d).

In its Rule 1925(a) opinion, the trial court explained that it fashioned Brooks' sentence based on the "lengthy period of incarceration for which he would get no credit in this matter" and his "steps to address his underlying substance abuse issues which played a role in his crimes." Rule 1925(a) Op. at 7. It also noted Brooks' remorse and that it "crafted a sentence that would serve to make the Complainants whole financially over time with restitution[.]" *Id.* The court emphasized that its sentence "will require [Brooks] to continue to attend to his mental health and substance abuse issues[.]" *Id.* The court stated that it did not follow the Sentencing Guidelines because Brooks had already served 17 months and having him "serve the balance of 46 months of incarceration (plus years of parole) would have jeopardized the progress [Brooks] had exhibited related to both his substance abuse and mental health issues." *Id.*

We conclude that the court abused its discretion. We find *McCain* and *Wilson* persuasive. In *McCain*, the trial court convicted McCain of multiple

offenses including aggravated assault. McCain had "fired three times at the ground . . . . The bullet ricocheted off the cement and struck [the victim] in the foot." *McCain*, 176 A.3d at 239. The Sentencing Guidelines recommended a sentence of 72 to 84 months in prison, plus or minus 12 months. The court sentenced McCain to 11½ to 23 months with immediate parole to house arrest, followed by seven years' reporting probation. The court relied on McCain's work history, his time served in custody, and its belief that McCain was "turning [his] life around." *Id.* at 241-242.

We remanded for resentencing. *Id.* at 242. We pointed out McCain's illegal possession of the gun and one victim's injuries, "which required surgery and physical therapy, and which have caused him long-term pain." *Id.* We also noted McCain's extensive criminal history, including a federal firearms offense, and stressed that the sentence was "drastically below even the mitigated guidelines range, and ignore[d] the Sentencing Guidelines recommendation that Level 5 offenses correspond to state prison terms, rather than other forms of restrictive intermediate punishment." *Id.* at 242-43. We found the sentence was "unreasonably lenient, and an abuse of the trial court's discretion," based on the nature of the crimes and "McCain's significant criminal history, which include[d] violent crimes and a federal firearms offense, and [which] display[ed] his inability to abide by the terms of less restrictive punishments[.]" *Id.* at 243.

In *Commonwealth v. Wilson*, 946 A.2d 767 (Pa.Super. 2008), Wilson pleaded guilty to multiple offenses including robbery. Wilson had "accosted

two separate victims with a brick, injuring one so badly that she lost almost all of her teeth and required staples in her head to close a gaping wound, and causing his other victim to suffer a black eye." **Wilson**, 946 A.2d at 768 (footnote omitted). The Sentencing Guidelines recommended standard-range sentences of 66 to 84 months and 40 to 54 months for the lead robbery convictions. **See id.** at 774. The trial court imposed 11½ to 23 months' imprisonment plus seven years' reporting probation. We found the sentence to be an abuse of discretion. We concluded the sentencing court had erroneously focused "almost exclusively on the fact that Wilson's actions were the result of his drug addiction and that Wilson acknowledged his problem and wanted to be treated for it." **Id.** at 770. We found the sentence "unreasonably low" considering the "unusually brutal" nature of the crimes, the fact that Wilson posed a continuing threat to the public, his prior aggressive conduct, the applicable guideline ranges, and the injuries the victims suffered. **Id.** We explained that "many crimes are committed by drug-[dependent] individuals, but drug dependence alone does not justify leniency to this degree, particularly when it is accompanied by aggressive behavior." **Id.** at 775.

Here, the Sentencing Guidelines recommended a sentence of 72 to 90 months plus or minus 12, for the lead charge of persons not to possess a firearm. The trial court sentenced Brooks to 11½ to 23 months' incarceration followed by 15 years' reporting probation. The sentence the court imposed is four years *below* the mitigated range. This is unreasonable considering the Guidelines, the nature and circumstances of the offense, and the history and

characteristics of the defendant. **See** 42 Pa.C.S.A. § 9781(d)(1), (4). Brooks shot into the victim's vehicle at least 20 times. Brooks then pointed his gun at both victims and repeatedly told them that he was going to shoot them. Notably, Brooks was not licensed to carry a firearm and was ineligible to possess one due to his prior criminal convictions. As the Commonwealth pointed out, the instant case was Brooks' *fourth* firearms conviction. Even considering the significant amount of restitution ordered by the court, the current sentence fails to consider adequately all the Section 9781(d) factors.

As in **Wilson**, the trial court here relied heavily on the fact that Brooks' actions seemed to be impacted by his mental health and substance abuse issues. Mental health and substance abuse issues, while relevant, do not warrant the four-year downward departure here from the Sentencing Guidelines. Additionally, like **McCain**, Brooks has an extensive criminal history that included numerous firearms convictions. The sentence the court imposed failed to adequately weigh "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community[.]" 42 Pa.C.S.A. § 9721(b). We therefore vacate the judgment of sentence and remand for resentencing.

Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>6/25/2024</u>